IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE BOWERS, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 06-3229 |
| CITY OF PHILADELPHIA, et al. | : | |

**SURRICK, J.**                                                                                          **DECEMBER  12 , 2008**

**MEMORANDUM & ORDER**

Presently before the Court is Defendants' Motion in Limine to Preclude Reference to, or Evidence of, any Past Consent Decrees or Orders of Contempt Involving the Philadelphia Prison System (Doc. No. 170). For the following reasons, the Motion will be granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff Lee Bowers ("Plaintiff") alleges that he was subjected to unconstitutional conditions of confinement at the intake unit of the Philadelphia Prison System (the "PPS") as a result of overcrowding from June 23, 2006, through June 26, 2006. (Doc. No. 34 ¶¶ 21-24, 26-28.)[1] Plaintiff is not the first to allege unconstitutional conditions in the PPS. As we have noted in past opinions in this case, state and federal courts have grappled with the issue of prison overcrowding in the PPS for more than thirty years. State court litigation began in 1971 with the filing of *Jackson v. Hendrick*, in which inmates in the City's prison system alleged that their conditions of confinement violated their constitutional and statutory rights. *See* 764 A.2d 1139, 1141 (Pa. Commw. Ct. 2000) (reciting history). In 1972, the trial court held that conditions in

---

[1] Our recitation of the facts is brief and limited to the issues at bar. A more exhaustive recitation of the facts can be found in the Court's January 25, 2007 Memorandum Opinion. (Doc. No. 94.)

the prison amounted to cruel and unusual punishment and ordered the City to take immediate action to rectify the situation. *Id.* Over the next twenty years, the parties entered into a series of consent decrees that laid out specific measures that the City was obligated to take in order to provide constitutionally adequate conditions. *Id.* The final consent decree was not approved until 1991. *See Jackson v. Hendrick*, No. 2437, slip op. at 3 (Phila. Ct. Com. Pl. July 1, 2002). In 1996, the trial court in *Jackson* noted that Philadelphia's prisons "remain dangerously overcrowded, while conditions remain, in many respects, cruel, disgusting and degrading." 764 A.2d at 1145.

Federal litigation involving conditions in the PPS began in 1982 with the filing of *Harris v. City of Philadelphia*, No. 82-1847 (E.D. Pa. 1982). The plaintiffs in *Harris*, inmates at the Holmesburg Prison, filed a class action complaint against the City of Philadelphia and individual Philadelphia officials alleging overcrowded conditions that violated the First, Eighth, Ninth, and Fourteenth Amendments. *See Harris v. City of Phila.*, No. 82-1847, 2000 WL 1239948, at *1 (E.D. Pa. Aug. 30, 2000). That litigation led to court-approved consent decrees in 1986 and 1991, as well as a Ten-Year Plan approved by the court in 1996. *Id.* at *1-4. The litigation also resulted in a series of orders beginning in 1994 and ending in 1999 that approved over 250 policies and procedures in the prisons that were a product of negotiations between the City and the plaintiff class. *Id.* at *4. Throughout the eighteen-year litigation, the consent decrees and orders mandated various reform measures in an effort to address the crisis conditions that existed at the PPS. In 2000, the court approved a final settlement, and federal supervision of the PPS came to an end. *Id.* at *11.

On July 24, 2006, Plaintiff brought the instant lawsuit alleging that unconstitutional

conditions in the intake unit of the PPS caused him to suffer a blood clot in his left leg.  (*See* Doc. No. 1; Doc. No. 34 ¶ 29.)  Plaintiff originally brought the Complaint as a class action in which he was a named plaintiff.  On January 25, 2007, we entered a Preliminary Injunction in the class action.  (*See* Doc. No. 94.)  We made findings of fact based upon evidence and testimony presented at an evidentiary hearing as well as an on-site tour of the prison facilities. (*Id.* at 3.)  In the Order, we stated:

> It is DECLARED that the conditions that existed in the intake unit at [the Curran-Fromhold Correctional Facility ("CFCF")], in the detention unit of the [Philadelphia Police Administration Building ("PAB")], and in the holding cells in the Philadelphia Police Districts during the summer of 2006, violated the constitutional rights of the Plaintiffs and members of the Plaintiff class as provided under the Fourteenth Amendment of the United States Constitution.

(Doc. No. 94.)  Furthermore, the Order detailed the unconstitutional conditions that we found:

> The unconstitutional conditions included the holding of post-arraignment detainees for days in holding cells at the intake unit of CFCF, in the detention unit of the PAB, and in the holding cells in the Police Districts in numbers that far exceeded the capacity of the cells, and which required detainees to sit and sleep on concrete floors and on top of each other.  The conditions also included the failure to provide beds and bedding, the failure to provide materials for personal hygiene including soap, warm water, toothpaste, toothbrushes, and shower facilities, unsanitary and unavailable toilet facilities, the failure to provide for the medical needs of detainees, the failure to timely classify detainees in the intake unit at CFCF, and the lack of fire safety protection at the PAB and in the Police Districts.

(*Id.*)  We ordered Defendants to take immediate affirmative steps to redress these conditions.

(*Id.*)  Defendants consented to extensions of the preliminary injunction through October 22, 2007.  (*See* Doc. No. 123.)

On August 30, 2007, Plaintiffs and Defendants jointly moved to terminate the preliminary injunction so that the parties could enter into a private settlement agreement that would continue the monitoring of the prisons without federal court supervision.  (Doc. No. 148.)

On October 10, 2007, we granted that joint motion, terminated the preliminary injunction, and dismissed the class claims. (Doc. No. 151.) The only claims now remaining in the case are those asserted by Plaintiff in his individual capacity. Plaintiff proceeds only against Defendants City of Philadelphia and King, in his official capacity. (Doc. No. 165 at 1.) Trial in this matter is scheduled to begin on January 5, 2009.

Defendants have filed the instant motion in limine seeking to preclude Plaintiff from making reference to (1) *Jackson* and *Harris*, the consent decrees entered in those cases, and the contempt orders issued in those cases; and (2) the extension of the January 25, 2007, preliminary injunction in this case and the private settlement agreement related to Plaintiff's injunctive relief claims. Defendants contend that the evidence is not admissible because it lacks relevance, is unfairly prejudicial, qualifies as hearsay, and constitutes evidence of compromise negotiations.

## II.    LEGAL STANDARD

### A.    Relevance

Federal Rule of Evidence 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Federal Rule of Evidence 402 then provides that "all relevant evidence is admissible." Fed. R. Evid. 402. The Third Circuit has stated that "'Rule 401 does not raise a high standard,'" *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 109-10 (3d Cir. 1999) (*quoting In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 782-83 (3d Cir. 1994)), observing that:

> As noted in the Advisory Committee's Note to Rule 401, "relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Because the rule makes evidence relevant "if it has any tendency to prove a consequential fact, it

4

follows that evidence is irrelevant only when it has no tendency to prove the fact." *Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992) (*quoting* Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5166, at 74 n.47 (1978)).

### B. Unfair Prejudice

Federal Rule of Evidence 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The Third Circuit has defined prejudice under Rule 403 as follows:

> [T]he . . . prejudice against which the law guards [is] . . . unfair prejudice . . . prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found. Prejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed "prejudicial." However, the fact that probative evidence helps one side prove its case obviously is not ground for excluding it under Rule 403. Excluded evidence must be unfairly prejudicial, not just prejudicial.

*Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 665, 670 (3d Cir. 2002) (citations omitted).

### C. Hearsay

Federal Rule of Evidence 801 provides that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802. Certain types of statements are admissible in court as non-hearsay. *See* Fed. R. Evid. 801. For instance, Federal Rule of Evidence 801(d)(2)(A) provides that a statement is not hearsay if it "is offered against a party

and is the party's own statement." Fed. R. Evid. 801(d)(2)(A).

### D. Evidence of Compromise Negotiations

Federal Rule of Evidence 408 makes conduct or statements made in compromise negotiations regarding the claim inadmissible to prove liability. Fed. R. Evid. 408. The Rule provides:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408. "[I]f application of Rule 408 exclusion is doubtful, [the] better practice is to exclude evidence of compromise negotiations." *Affiliated Mfg., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526 (3d Cir. 1995) (*citing Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987)).

## III. LEGAL ANALYSIS

### A. Relevance

Defendants contend that introduction of material related to the consent decrees in *Harris* and *Jackson* are not relevant, because "it will not tend to prove that [Plaintiff] was subjected to unconstitutional conditions of confinement in June 2006." (Doc. No. 170 at 9.) To support this argument, Defendants note that "there was no finding by the *Harris* or *Jackson* Courts that the intake center of CFCF was overcrowded and unconstitutional," and the evidence "is just too

remote in time to prove that the City of Philadelphia was deliberately indifferent to the constitutional rights of [Plaintiff]." (Doc. No. 170 at 9.)  Plaintiff asserts that *Harris* and *Jackson* and the consent decrees resulting therefrom "could not be more relevant," because a "central issue in this case is whether the conditions that existed in June, 2006, in the intake unit at PPS were the result of deliberate indifference to the history of overcrowding and other unconstitutional conditions of confinement at PPS." (Doc. No. 171 at 3-4.)  Plaintiff further asserts that "[t]he issue of deliberate indifference cannot be litigated in a factual vacuum." (*Id*. at 4.)

We agree that the consent decrees from *Harris* and *Jackson* are relevant.  The existence of those decrees – and the extensive litigation over unconstitutional conditions of confinement in the PPS – makes it "more probable . . . than it would be without the evidence" that Defendants were deliberately indifferent to Plaintiff's constitutional rights.  *See* Fed. R. Evid. 401.  This is so, because, as Plaintiff argues, "[t]he issue of deliberate indifference, by definition, requires consideration of the City's knowledge of the conditions and problems that led to the constitutional injury and the City's response or lack of response to this knowledge and notice." (Doc. No. 171 at 3.)  *See Anela v. City of Wildwood*, 790 F.2d 1063, 1069 (3d Cir. 1986) (holding that district court erred in granting summary judgment for the city where "[t]he description of the cells revealed a long-standing condition that had become an acceptable standard and practice for the City").  The existence of the *Harris* and the *Jackson* litigation make it more likely than not that Defendants had knowledge of overcrowding as a "long-standing condition." *See id*.  Those cases, and their attendant consent decrees, also make it more likely that Defendants acted with deliberate indifference to Plaintiff's constitutional rights.  Under

7

these circumstances, and given that "Rule 401 does not raise a high standard," *Hurley*, 174 F.3d at 109-10, we cannot say that the *Harris* and *Jackson* litigations "ha[ve] no tendency to prove" a consequential fact, *Blancha*, 972 F.2d at 514; s*ee also*, *e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008) ("A consent decree may properly be admitted to demonstrate that a defendant was aware of its legal obligations.") (*citing United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981)); *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1413 (4th Cir. 1992) (affirming district court's admission of consent decree into evidence to show motive and intent).

### B. Unfair Prejudice

Defendants next contend that "the consent decrees in *Harris* and *Jackson* are inadmissible under Federal Rule of Evidence 403 because "the probative value is substantially outweighed by the danger of unfair prejudice." (Doc. No. 170 at 11.) Defendants make this one-sentence assertion at the end of a paragraph about hearsay under Rule 801. Defendants do not support the assertion with any argument. Plaintiff contends that "the balance plainly mandates admission . . . with limiting instructions and the overwhelming relevance of this evidence." (Doc. No. 171 at 5 n.1.)

We agree that the consent decrees in *Harris* and *Jackson* are prejudicial to Defendants in that they are not helpful to Defendants' cause. However, we must determine whether the consent decrees present "unfair prejudice [that] clouds impartial scrutiny and reasoned evaluation of the facts." *Goodman*, 293 F.3d at 670. The consent decrees offer evidence of long-standing conditions in the prison system that relate to Plaintiff's claim of deliberate indifference. Thus, they have probative value. The probative value is not outweighed by the danger of unfair prejudice. The consent decrees will not affect "reasoned evaluation of the facts," *see id*., since

Plaintiff intends to introduce the consent decrees into evidence only to show "knowledge of the conditions and problems that led to the constitutional injury," (Doc. No. 171 at 3). Defendants may, of course, introduce evidence that the consent decrees are "too remote in time" to prove deliberate indifference. (Doc. No. 170 at 9.) We will also permit Defendants to submit a limiting instruction prior to trial to minimize any risk of misleading the jury. Defendants may also raise additional objections at trial if Plaintiff attempts to introduce evidence about the consent decrees beyond what is reasonably necessary. *See*, *e.g.*, *Wiles v. Dep't of Educ.*, No. 04-0442, 2008 WL 4198506, at *1 (D. Haw. Sept. 11, 2008) (admitting into evidence consent decree from prior action as "relevant to the central issue in this case: whether Defendant acted with deliberate indifference," and finding no unfair prejudice, but allowing the defendant to propose a limiting instruction). *Cf. Geslak v. Suffolk County*, No. 06-0251, 2008 WL 4693336, at *3 (E.D.N.Y. Oct. 23, 2008) (excluding from evidence a twenty-four year old consent decree in an employment discrimination case not involving a claim of deliberate indifference).

    **C.**     **Hearsay**

Defendants contend that Plaintiff will attempt to offer the consent decrees in *Jackson* and *Harris* as admissions by a party opponent under Federal Rule of Evidence 801(d)(2). (*See* Doc. No. 170 at 9.) Defendants assert that the consent decrees are not admissions under the Rule, because they "did not contain admissions of liability" and "consent decrees, by their very nature, are not statements of admissions and therefore do not fall under the exception to the hearsay rule." (*Id.* at 10.) Plaintiff disavows any intent to introduce the consent decrees as party admissions, noting that "these court rulings are simply not statements of a party." (Doc. No. 171 at 5.) Plaintiff states that "the evidence regarding contempt findings [is] offered only to prove

9

notice to the City of the constitutional perils of overcrowding and the City's direct knowledge of the problematic conditions of confinement[.]" (*Id*. at 4.) Plaintiff therefore contends that there is no hearsay issue.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Plaintiff is not offering the consent decrees "to prove the truth of the matter asserted." *See id*. Plaintiff instead seeks to offer the consent decrees to show that Defendants had knowledge of overcrowding and other conditions, and that Defendants took steps to remedy those conditions. The consent decrees are therefore not hearsay. *See* Fed. R. Evid. 801(c). Moreover, we agree with Plaintiff that the court rulings are not statements of a party. The hearsay exception that provides for admissions by party opponents does not apply.

        D.      **Evidence of Compromise Negotiations**

Defendants assert that Federal Rule of Evidence 408 bars the introduction of evidence related to the consent decree litigation, since "[t]he policies underlying Rule 408 would be undermined by permitting Plaintiff to introduce the consent decrees or any evidence related to the consent decrees." (*See* Doc. No. 170 at 12-13.) Those policies include the encouragement of settlements and compromises of disputed claims. (*Id.* at 12.) Defendants rely in part on *Bowers v. NCAA*, 563 F. Supp. 2d 508, 538 (D.N.J. 2008), for the proposition that "Rule 408's exclusionary provision is not limited to settlements between private parties, but also applies to civil consent decrees between private parties and government agencies." (*Id.* at 12-13.) Plaintiff concedes that Rule 408 justifies excluding consent decrees from evidence when they are "entered into by the same parties in the same case on injunctive issues." (Doc. No. 171 at 5 n.2.)

However, Plaintiff asserts that Rule 408 does not justify excluding consent decrees from evidence when they are from prior actions and are offered to show notice and knowledge that, coupled with evidence of neglect, demonstrates Defendants' deliberate indifference.  (*Id.*)

Defendants correctly interpret Rule 408 and the rule in *Bowers v. NCAA* that precludes admission of certain consent decrees.  *See* 563 F. Supp. 2d at 538.  However, Rule 408 does not stretch so far as to encompass evidence of consent decrees from prior actions offered to show notice – not wrongdoing – in a case involving allegations of deliberate indifference.  The Advisory Committee's Notes to the 2006 Amendments make clear that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice.  *See* Fed. R. Evid. 408 Advisory Committee's Notes (*citing United States v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful); *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) (in a civil rights action alleging that an officer used excessive force, a prior settlement by the City of another brutality claim was properly admitted to prove that the City was on notice of aggressive behavior by police officers)).  Plaintiff seeks to introduce evidence of the past consent decrees from *Harris* and *Jackson* to do just that.  Plaintiff's introduction of the consent decrees to show notice is consistent with *Austin* and *Spell*, on which the Advisory Committee relied, and is also consistent with Rule 408's well-established exception that the rule "does not require exclusion if the evidence is offered for purposes not [otherwise] prohibited."  Fed. R. Evid. 408; *see also Hugo's Skateway*, 949 F.2d at 1346 (affirming district court's admission of consent decree into evidence "for the sole purpose of any bearing it may have, if any, on the motive or intent with respect to the acts that are in issue in [the] suit").

11

Accordingly, Federal Rule of Evidence 408 does not bar Plaintiff from introducing the *Harris* and *Jackson* consent decrees to show that Defendants had notice and knowledge on the issue of deliberate indifference.

### E. Evidence of Preliminary Injunction and Settlement Agreement

Finally, Defendants seek to preclude Plaintiff from making reference to the extension of the preliminary injunction in this matter and the parties' private settlement agreement. Defendants contend that this evidence is not admissible under Federal Rule of Evidence 408, as it constitutes "conduct or statements made in compromise negotiations." (Doc. No. 170 at 12 n.3.) Plaintiff does not appear to dispute this contention. We agree that any reference to the extension of the preliminary injunction and the private settlement agreement in this matter is not admissible under Rule 408. *See* Fed. R. Evid. 408. Exclusion of this evidence advances the policy of encouraging settlement of disputed claims. *See, e.g.*, *Trout v. Milton S. Hershey Med. Ctr.*, 572 F. Supp. 2d 591, 599 (M.D. Pa. 2008) ("It is well established that statements made for purposes of settlement negotiations are inadmissible.") (*citing Young v. Verson Allsteel Press Co.*, 539 F. Supp. 193, 196 (E.D. Pa. 1982)). Accordingly, Defendants' motion in limine will be granted insofar as it precludes Plaintiff from referencing the earlier settlement agreement and the parties' consent to extend the preliminary injunction in this case.

### IV. CONCLUSION

For these reasons, Defendants' Motion will be granted in part and denied in part.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE BOWERS, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 06-3229 |
| CITY OF PHILADELPHIA, et al. | : | |

**ORDER**

AND NOW, this  12th  day of   December  , 2008, upon consideration of Defendants' Motion in Limine (Doc. No. 170), and all documents submitted in support thereof and in opposition thereto, it is ORDERED as follows:

1. Defendants' Motion in Limine to Preclude Plaintiff from Referencing Consent Decrees and Orders of Contempt in *Harris* and *Jackson* is DENIED.

2. Defendants' Motion in Limine to Preclude Plaintiff from Referencing Extension of the Preliminary Injunction and the Private Settlement Agreement in this matter is GRANTED.  Plaintiff is precluded from making reference to, or otherwise introducing into evidence, the parties' consent to extend the January 25, 2007 preliminary injunction in this matter and the private settlement agreement related to Plaintiff's claims for injunctive relief, unless Defendants open the door to admitting this evidence.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, J.